United States District Court
Eastern District of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JORGE HINZ-FERRAN,

Petitioner,

v.

WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER, *et al.*,

Respondents.

Case No. 1:26-cv-04992-NW

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Re: ECF No. 1

This habeas action concerns the detention of Petitioner Jorge Hinz-Ferran, a noncitizen who was ordered removed to Cuba in 2013, but was released on an order of supervision after immigration authorities were unable to remove him. The petition is GRANTED, and Respondents are ordered to release Petitioner.

## I. BACKGROUND

Petitioner is a citizen of Cuba who became a legal permanent resident of the United States in 2010. ECF No. 1 at 4. In 2012, Petitioner was convicted of various felony offenses and found removable on that basis. *See* ECF No. 13-1 at 2–3. He was ordered removed in 2013. ECF No. 1 at 4. However, DHS was unable to remove Petitioner, and he was subsequently released on an order of supervision ("OSUP"), with directions to report to the ICE office when directed, obey all federal state and local laws, among other conditions. *See* ECF No. 13-3 at 1–4.

Following his release, Petitioner began living with his family in Florida. *See* ECF No. 1 at 4. He is married to a United States citizen, is the father of two young children, who are also United States citizens, and has owned his own business since 2016. *Id*. He further alleges that he

has followed all the conditions of his OSUP. *Id.* Respondents have not submitted any evidence to the contrary.

In November 2025, Petitioner reported to the ICE office for his regularly scheduled OSUP check-in and was arrested by ICE. *Id.* at 5. Four months later, ICE served Petitioner with a "Notice of Revocation of Release[,]" stating that Petitioner had "violated a condition of" his release, and that "[c]ircumstances [had] changed such that there is a significant likelihood of removal in the reasonably foreseeable future." *Id.* at 5; ECF No. 13-2 at 1. What conditions were violated, and what those changed circumstances were, are not listed in the notice.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

ICE is authorized to detain noncitizens subject to final orders of removal pursuant to 8 U.S.C. § 1231, which provides for a 90-day "removal period" during which the noncitizen is subject to mandatory detention while ICE arranges removal. *See* 8 U.S.C. § 1231(a)(1). If ICE is unable to remove the noncitizen during the removal period, they may release the noncitizen on an OSUP. *Id.* § 1231(a)(3), (6). Further, if the noncitizen's post-order detention exceeds six months and "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," and the noncitizen must be released. *Zadvydas*, 533 U.S. at 699.

Upon release, a noncitizen subject to a final order of removal must comply with the terms provided in his OSUP. 8 U.S.C. § 1231(a)(3). If the noncitizen violates the terms of his OSUP, or if "on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future," ICE may revoke the noncitizen's release. 8 C.F.R. § 241.13(i). Upon such a determination:

> [T]he alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

*Id.* § 241.13(i)(3). Lastly, in the event that a noncitizen's OSUP is revoked for violating a condition, the noncitizen may only be "continued in detention for an additional six months in order to effect the [noncitizen's] removal, if possible, and to effect the conditions under which the alien had been released." *Id.* § 241.13(i)(1).

Government agencies are required to follow these regulations. *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). And "where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, like the opportunity to be heard, and ICE fails to adhere to it, the challenged action is invalid." *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (citation modified). Accordingly, numerous courts within this district have found that ICE's failure to comply with the procedures detailed in § 241.4(i) constitutes a violation of the noncitizen's constitutional right to due process. *See, e.g.*, *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771 (E.D. Cal. July 16, 2026); *Orellana Quintanilla v. Mullin*, No. 1:26-cv-06627-DJC-CKD, 2026 WL 2660124 (E.D. Cal. Sep. 9, 2026).

ICE failed to comply with § 241.13(i) in detaining Petitioner for multiple reasons. First, ICE did not serve Petitioner with a Notice of Revocation of his OSUP or provide an informal interview until *four months after his initial arrest*. Second, though the Government belatedly

claimed that Petitioner had violated a condition of his OSUP, and that his removal was foreseeable, there is no evidence in the record supporting either conclusion. Indeed, Respondents have not submitted any evidence to counter Petitioner's assertion that he has followed all the conditions of his release. And with respect to removal, ICE has made no attempt to remove Petitioner to Cuba since detaining him over eleven months ago, suggesting the removal was not foreseeable at the time of his arrest. Finally, even assuming Petitioner did violate a condition of his OSUP, his detention has well-surpassed the six-month mark permitted by regulation. ICE's failure to follow its own regulations multiple times over in revoking Petitioner's OSUP was a violation of his constitutional right to due process.

But Respondents argue that Petitioner's detention remains lawful under 8 U.S.C. § 1231(a)(2) and (6) because Petitioner may be removed to Mexico once he consents to the removal. *See* ECF No. 13 at 2. This argument lacks merit.

As to detention under § 1231(a)(6), this subsection allows the Government to detain a noncitizen for "a period *reasonably necessary* to bring about that [noncitizen]'s removal from the United States." *Zadvydas*, 533 U.S. at 699. "The presumptive ceiling for this detention is six months, after which, 'once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.'" *Arias Garcia v. Warden*, No. 1:26-CV-04659-DJC-JDP, 2026 WL 2254380, at *1 (E.D. Cal. Aug. 4, 2026) (quoting *Zadvydas*, 533 U.S. at 689). "[D]istrict courts have repeatedly found that similarly situated petitioners—Cuban nationals whom the Government is attempting to remove to Mexico against their will—have met their initial burden [under *Zadvydas*], especially because the current standing agreement with Mexico appears to be conditioned on the consent of the noncitizen." *Arias Garcia*, 2026 WL 2254380, at *2 (collecting case).

Here, Petitioner has been detained for eleven months and has not consented to removal to Mexico, thus, removal in the foreseeable future is not likely. No portion of § 1231(a) authorizes the continued detention of a noncitizen to a third-country where the Government has provided no legal basis for removal to that country. *See Barbaro Elisie Gaceran-Jimenez*, 2026 WL 2262177

United States District Court
Eastern District of California

(finding that refusal to provide affirmative consent to removal to Mexico "does not constitute noncooperation of a kind that would trigger a suspension of the removal period"). To adopt Respondents' position that ICE may detain Petitioner indefinitely until he consents to his removal to Mexico would "sanction the use of detention to coerce otherwise unavailable deportations." *Arias Garcias*, 2026 WL 2254380, at *3.

For all these reasons, Petitioner's detention is unlawful, and he must be released.

## IV. CONCLUSION AND ORDER

Accordingly, the Petition for Writ of Habeas Corpus is GRANTED. Respondents shall release Petitioner on the same conditions as his prior order of supervision. Respondent are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, strict compliance with the requirements of 8 C.F.R. § 241.13(i).

The Clerk of Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: November 5, 2026

Noël Wise
United States District Judge